## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**RENETTA SAUNDERS-LARRY**

        Plaintiff(s),

                                    CASE NO:

Vs

**WELLCARE HEALTH PLANS, INC.**

        Defendant(s).

_____/

## ORIGINAL COMPLAINT

    COMES NOW, the Plaintiff, RENETTA SAUNDERS-LARRY, by and through her undersigned attorney, and brings this action against WELLCARE HEALTH PLANS, INC. pursuant to the Civil Rights Act of 1866 (Equal Rights Under Law) and 42 U.S.C. § 1981.

### A. Jurisdictional Statement

1.    The U.S. District Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

2.    That the federal question involved in this case arises under 42 U.S.C. § 1981 ("Equal Rights Under Law").

3.    That the Plaintiff is a resident of Tamp (Hillsborough County), Florida.

4.    That the Defendant is a private corporation that is registered in the State of Florida Department of State, and having a principal office located at Renaissance 1, 8735 Henderson Road, Tampa, Florida 33634.

5.    That the Defendant *constructively discharged* the Plaintiff in 2019, after a long train of

abusive treatment, under circumstances that give rise to an inference of racial retaliation and racial discrimination.

6.     The parties have engaged in pre-litigation grievance communications regarding the Plintiff complaints of racial harassment and discriminatory treatment, since September 2016 up through the Summer of 2019, including the filing of a claim under Florida's workers' compensation law.

## STATEMENT OF FACTS

### Introduction

7.     Plaintiff Renetta Saunder-Larry is an African American woman. She has two bachelor degrees and a master of business administration (MBA) agree. She is an alumnus of the University of Florida.   She is light-brown complexioned, with lighter skin, Native-American features, and brownish, red hair—*all of these physical characteristics became the subject of negative comment or ridicule and discriminatory comments from co-workers: Kim Nazario (African-American female)*.

8.     The Defendant hired the Plaintiff Saunders-Larry on or about September 3, 2013 for the position of Data Reconstruction Specialist, at $19.94 per hour, 40 hours per week.   Plaintiff was informed that she would be promoted in early 2014.

9.     Plaintiff Saunders-Larry was hired on through a Temp. Agency, and worked her first 90-days as a probationary employee.   Her supervisor was Dorinda Saffro (white female), who liked Mrs. Saunders-Larry, as they had previously known each other from prior work history at Health Care Services and Met Life (1980s and 1990s)(10-11 years).

10.     When Mrs. Saunders-Larry was first hired, there was very little training and very little structure: there were no team leads, no supervisors, and no subject-matter experts.   There were

three other employees on the Plaintiff's work team, as follows: (a) Linda Gibson (black female);

Patricia Stingle (white female); Myra (Surname Unknown)(Asian female); and Plaintiff (black

female).   Consequently, Ms. Dorinda Saffro informed Mrs. Saunders-Larry (MBA, University of

Florida) that when the work team was formally organized, that Mrs. Saunders-Larry would be

made "Supervisor."

11.     Ms. Dorinda Saffro left the organization in February or March 2014.   It is believed that

Ms. Saffro was fired for being a whistleblower regarding claims-processing fraud.   Ms. Saffro

was replaced by Diana Crews (Hispanic female).

12.     Ms. Saffro selected Tiffany King (black female) to become the first "Supervisor" of the

work team. Tiffany King has been a supervisor on another team, and so she was transferred over to

the Plaintiff's work team in 2014.

13.     Diana Crews (Hispanic female) next informed Plaintiff Saunders-Larry that nobody within

the organization has processed the Plaintiff's promotion to "Supervisor."

        a.      Plaintiff Saunders-Larry complained to Human Resources in 2014, about not

receiving her promotion;

        b.      Plaintiff Saunders-Larry spoke to a Human Resources Recruiter about her

grievances and concerns (i.e., not receiving the promotion to "Supervisor.")   She was informed

that the grievance had been elevated to Human Resources Director Charlie Hines, but she received

no word that anything has ever transpired or that an investigation was ever conducted or

concluded. NOTE: the initial grievance of 2014 was not based upon race or upon any other

protected class.

        c.      Plaintiff Saunders-Larry spoke to Vice President Brian Luidhardt, who stated that

3

he was trying to work things out, but Plantiff received no word that anything had ever transpired or that an investigation was ever conducted or concluded.

      d.     Meanwhile, it should be noted here that, although Tiffany King had been given the "Supervisor" position that had been denied to Plaintiff, both Ms. King (Supervisor) and Mrs. Saunders-Larry (Plaintiff) got along with each other.

14.     Supervisor Tiffany King (black female) left the organization sometime in November or December 2014.   Ms. King was replaced by Kim Nazario (a black female), who became the "Supervisor" some time in 2015.   Unfortunately, there was an immediate personality conflict between Kim Nazario (a darker-skinned black female) and Mrs. Saunders-Larry (a much lighter-skinned African American female).

15.     At all times material to this complaint, Mrs. Saunders-Larry had a MBA from the University of Florida, whereas Kim Nazario did not even have an undergraduate college diploma.

15.     Importantly, as previously mentioned, Plaintiff Renetta Saunder-Larry is a lighter-skinned African American woman. She is light-brown complexioned, with lighter skin, Native-American features, and brownish, red hair—*all of these physical characteristics became the subject of negative comment or ridicule and discriminatory comments from co-worker: Kim Nazario (African-American female)*.

16.     From between 2014 and 2015, the Plaintiff Saunders-Larry worked with the following fellow teammates:

      A.     Ernestine Burrell (black female)(from New Jersey)

      B.     Patricia Stingle (white female)(from Canada)

      C.     Linda Gibson (black female)(from New York)

D.      May Sou Porras (Pilipino-American)(from the Philippines)

E.      Kim Nazario (black female)(from New York)

17.     Kim Nazario significantly changed the working conditions, in that she turned Mrs. Saunders-Larry's fellow co-workers against Mrs. Saunders-Larry. At the same time, Supervisor Kim Nazario blocked Mrs. Saunders-Larry's efforts to get either transferred or promoted out of the department.

18.     Kim Nazario turned Claims Supervisor Shana McCue (white female) against Plaintiff Saunders-Larry.   Supervisor Nazario also promoted Ernestine Burrell, May Sou Porras, and Patricia Stingle to senior-level positions (i.e., "Senior Data Recon Specialist" positions, with an increase in pay) over Mrs. Saunders-Larry, making her the most "junior" employee on the team.

19.     Kim Naraio then sent Plaintiff Saunders-Larry harassing email messages, such as: "I'm stalking you… I'm on your case."

20.     In August of September 2016, Kim Nazario walked past Mrs. Saunders-Larry's desk and pushed her hands into Saunders-Larry's hair, asking if they were "weaves or artificial extensions." This constituted the "tort" of assault, coupled with color-based discrimination in violation of federal anti-discrimination law.

21.     From November 2016 through December 2018, the Plaintiff attempted to resolve, in good faith, her color-based hostile working environment claims with the Defendant, lodging several written complaints, a few of which were written by her attorney. No meaningful or appropriate corrective action was taken.   Supervisor Nazario continued to harass Plaintiff Saunders-Larry because of the color of her skin.

22.     In January 2018, Plaintiff Saunders-Larry sustained a workplace accident, which grew out

from the hostile working environment, and which resulted in a Florida workers' compensation claim, which reached a settlement in 2019.   However, the long-train of workplace hostility, that was perpetuated by Supervisor Kim Nazario, continued up through the Plaintiff's constructive discharge in March 2019, as follows:

A.      Plaintiff Saunders Larry was isolated and ostracized on her work team at her employment.

B.      Plaintiff Saunders-Larry was not invited to social events or to certain important meetings.

C.      Supervisor Nazario treated Saunders-Larry differently and far worse than she treated other co-workers;

D.      Supervisor Nazario turned other Supervisors in the office against Mrs. Saunders-Larry, causing them to speak down to Mrs. Saunders-Larry;

E.      Supervisor Nazario blocked Mrs. Saunders-Larry from transferring or getting promoted out of the department;

F.      Supervisor Nazario humiliated Mrs. Saunders-Larry by promoting every member of the team to "Senior Data Recon. Specialists," while leaving Ms. Saunders-Larry as a "Data Recon. Specialist," even though Mrs. Saunders-Larry was most qualified and had good performance evaluations;

D.      Supervisor Nazario spoke down to and belittled Mrs. Saunders-Larry whenever she did speak to her; and,

E.      Supervisor Nazario physically assaulted Mrs. Saunders-Larry, through putting her hands in her hair, so as to belittle Mrs. Saunders-Larry because of her skin complexion.

23.     The color-based hostility was so intense that, after repeated complaints and grievances, and due to her deteriorating mental and physical health, Mrs. Saunders-Larry was forced to resign from her employment on March 2019.

### Count I.     DISPARATE TREATMENT (Color-Based Harassment)

24.     The Plaintiff hereby restates and re-alleges paragraphs 1 through 23, as though those averments were stated verbatim within this count. This count is alleged pursuant to all of the parameters permitted under the pleading standards of Rules 8 and 11 of the Rules Regulating the Florida Bar, and the Rules Regulating the Florida Bar.

25.     The Defendant (Supervisor Kim Nazario) subjected the plaintiff to color-based hostile working environment. This color-based hostile working environment was both subjectively and objective *severe* and *pervasive*, resulting in mental and physical injury to the Plaintiff.

26.     The Defendant (Supervisor Kim Nazario) treated similarly-situated white or non-light-skinned black employees less harshly, under similar circumstances.

27.     The Defendant knew about this color-based hostile working environment, but took no meaningful steps to remove Plaintiff Saunders-Larry from this hostile working environment, or to abate the color-based hostility directed by Supervisor Kim Nazario against the Plaintiff.

28.     The Defendant's color-based hostility culminated into an "adverse employment" action, in that the color-based hostility became so bad, that Defendant Saunders-Larry had no choice but to resign from her employment—a step which she took in March 2019.

29.     The Defendant ,therefore, constructively discharged Plaintiff Saunders Larry on March 2019, after a long train of color-based harassment and abuse.

30.     WHEREFORE, the Plaintiff demands:

A.      Trial by Jury.

B.      Judgment against the Defendants for compensatory and punitive damages.

C.      Affirmative Action, as deemed appropriate by the Court.

D.      Injunctive Relief, as deemed appropriate by the Court.

E.      Attorney's fees and costs.

F.      For whatever additional relief as is deemed just and appropriate by this honorable

Court.

_/s/ **Roderick O. Ford**_____

Roderick O. Ford
FBN: 0072620
The PMJA LEGAL DEFENSE FUND, INC.
C/o The Methodist Law Centre
400 N. Ashley Drive
Suite 1900
Tampa, Florida 33602
(813) 223-1200
(813) 223-4226 facsmile
admin@methodistlawcentre.com